Michael C. SCALLY, Appellant,

v.

Toni Suzanne SCALLY, Appellee.

No. 01–96–00068–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 18, 1996.

Simon W. Hendreshot, Houston, for appellant.

Sallee S. Smyth, Houston, for appellee.

Before ANDELL, COHEN and MIRABAL, JJ.

## OPINION

ANDELL, Justice.

Appellant, Michael C. Scally, appeals from an order that granted a "one-time" extinguishment of a single child support payment, but denied on-going modification of the child support payments he had agreed to make and that were incorporated in his and appellee's, Toni Scally's, final decree of divorce.

Appellant and appellee divorced October 8, 1991, when their three children were ages nine, four, and two. At the time, the appellant agreed to make monthly payments for their support in the amount of $4,000, payable on the first and 15th of each month. Further, he agreed to make additional biannual child support payments of $12,500 on January 1 and July 1 each year from 1992 to 1996.

The final decree of divorce obligated the appellant to provide support for his children until the date of the earliest occurrence of one of the following events:

(1) the youngest child reaches the age of eighteen (18), provided that, if the child is fully enrolled in an accredited primary or secondary school and a program leading towards a high school diploma, the periodic child support payment shall continue to be due and paid until the end of the school year in which the child graduates;

(2) the youngest child marries;

(3) the youngest child dies;

(4) the youngest child's disabilities are otherwise removed for general purposes;

(5) the youngest child is otherwise emancipated;

(6) further order modifying this child support.

On June 10, 1994, appellant filed a motion to modify in suit affecting the parent-child relationship, stating that the circumstances surrounding the support of his children had substantially and materially changed and requesting the court to decrease his child support obligation to which he had previously agreed.

At the hearing on June 27, 1995, the appellant testified as follows. In 1991, the year of

the divorce, as an anesthesiologist shareholder in a medical services corporation, he grossed about $400,000 and netted about $300,000. His income has declined since then. In April or May of 1994, he received $94,000 as his portion of the sale of the medical services corporation. He continued to work as a contract anesthesiologist for the purchaser of the corporation until he was laid off December 21, 1994. He is now unemployed, is having difficulty finding a job, but free-lances his anesthesiologist services. He can no longer afford to pay $6,100 per month child support.[1] He does not see how the children could have greater needs now than when he and appellee divorced. He has married and divorced again. In 1994, as part of the divorce settlement, he paid his second ex-wife $25,000 and agreed to pay off the note on her car. In 1995, a full-time anesthesiologist's annual compensation would be approximately $120,000, but he has not been offered a full-time job.

On cross-examination, appellant testified to the following. The ending balance in June 1994 for his medical services S-corporation account was $174,000. On June 8, 1994, the balance in his personal account was $9,000. He held the $94,000 from the sale of the medical services corporation from when he received it in May 1994, until he deposited it in September 1994. In June 1994, he also owned townhomes at 1660 and 1666 Beaconshire.[2] In June 1994, he owned 60[3] acres in Fulshear, Texas, that he bought for $6,000 per acre and at the time of the hearing was trying to sell for $7,000 an acre. In August 1994, he paid about $4,200 for remodeling and $7,000 for installing an enclosed patio at the 1660 Beaconshire property. In August 1994, he paid $2,350 for Rockets tickets. He owns a Harley motorcycle worth $12,000 and a boat worth $1,000. In November of 1994, he purchased a $27,000 Toyota. Exhibit R34 shows in 1994, appellant received $12,000 income from his ownership interest in Tritton Containers. Appellant's business, known as Greater Anesthesiologist Services, paid the rent for his girlfriend's apartment in January 1995, and in February 1995, it paid her $500 for part-time secretarial help.

Mr. Zerke, appellant's CPA, testified as follows. Greater Anesthesiologists Services collected $145,000 from January 1, 1995, through March 31, 1995, had expenses of $37,465.41, for a total net to appellant of $106,981.19. The collections for the first quarter of 1995 are one-half of what they were for 1994. Profit on the business in 1994 was $206,000. Exhibit M5 shows the net income from Greater Anesthesiologist Services declined from $590,670 in 1991 to $364,-510 in 1994. He counsels other doctors, and the employment outlook for appellant is not good.

Appellant took the stand again and testified that of the money his business collected in the first quarter of 1995, 90 percent was account receivables, and just the other 10 percent was newly generated revenue. In January 1995, when he realized he was not going to get a permanent job, but there were possibilities to get work in doctors' offices, he had to purchase $25,000 worth of equipment to take to the doctors' offices.

In its order, the trial court, on a "one-time" basis, extinguished appellant's obligation to make one biannual payment of $12,-500, due on July 1, 1995. The trial court left in place all of appellant's other periodic child support obligations to which he had agreed and which were established in the final divorce decree.

Appellant filed a motion for new trial, asserting the trial court had failed to comply with section 154.127 of the Texas Family Code regarding partial termination of child support and that there was insufficient evidence to support the court's order of additional amounts of child support above those

---

1. Appellant undoubtedly estimated this figure by dividing his annual $25,000 child support obligation by 12 months (= $2083) and adding it to his monthly $4,000 child support obligation.

2. His 1992 income tax return shows his basis in these properties is $146,135 and $138,744 respectively.

3. The court later found the amount of this acreage owned by appellant to be 85.869 acres, undoubtedly based on exhibit R–29, which shows that amount of property purchased by appellant.

for the first $6,000 of his monthly net resources. The trial court denied appellant's motion for new trial, and this appeal followed.

### Point of Error One

Appellant alleges that the trial court committed reversible error in failing to order partial termination of the child support obligation in accordance with section 154.127 of the Texas Family Code, which states:

> A child support order for more than one child shall provide that, on the termination of support for a child, the level of support for the remaining child or children is in accordance with the child support guidelines.

TEX.FAM.CODE ANN. § 154.127 (Vernon Pamph.1996).

At the time of the hearing on appellant's motion to modify, in June 1995, the children ranged in age from six to 13. The final decree of divorce contained no language for an adjustment of child support when the two older children no longer required support. In the challenged order, the court did not establish the monthly payments of child support, nor did it modify appellant's monthly child support obligation. The Texas Family Code permits and encourages parties to reach agreement regarding child support, and acknowledges that these agreements may vary from the child support guidelines affecting child support. TEX.FAM.CODE ANN. § 154.124(a) (Vernon Pamph.1996).

The trial court granted a "one-time" extinguishment of a $12,500 payment. We hold it did not grant a modification of appellant's periodic child support obligation. Therefore, it was not required to alter the original agreement of the parties, incorporated into the final decree of divorce, to include a provision for partial termination pursuant to section 154.127. We overrule appellant's first point of error.

We affirm the judgment.